# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTHONY HOFFMAN,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-171
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Anthony Hoffman brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 10) and the Commissioner's response in opposition (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed his application for DIB on August 25, 2014, alleging disability since June 13, 2014, due to a back injury. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Christopher Tindale. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on February 1, 2017. On May 9, 2017, the ALJ issued a decision denying plaintiff's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review on January 3, 2018.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

2

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2016.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of June 13, 2014 through his date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairments: degenerative joint disease and degenerative disc disease (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He should never climb ladders, ropes, or scaffolds. He can have only occasional exposure to extreme temperatures.
>
> 6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]
>
> 7. The [plaintiff] was born [in] . . . 1965 and was 51 years old, which is defined as a younger individual age 18-49, on the date last insured. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).
>
> 8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

---

[2] Plaintiff's past relevant work was as a roofer, a medium skilled position that plaintiff performed at the very heavy level of exertion; a roofer helper, a very heavy unskilled job; and a screen printer, a light semi-skilled job that plaintiff performed at the heavy exertion level. (Tr. 24, 77).

3

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from June 13, 2014, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled jobs including routing clerk, with 80,000 jobs in the national economy; marking clerk, with 290,000 jobs in the national economy; and inspector, with 100,000 jobs in the national economy. (Tr. 25, 78).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.     Medical Evidence**

On June 13, 2014, plaintiff fell off a ladder while working as a roofer. He presented to the emergency room, was found to have spinal compression fractures, and was fitted for a TLSO brace. (Tr. 415-28).

A July 2014 MRI of the lumbar spine demonstrated L1, L4, and T12 compression fractures, acute to subacute. (Tr. 324-25). That same month, an examination by Brent Miller, D.O, a physical medicine and rehabilitation specialist, showed plaintiff had normal gait and station, good coordination, and decreased sagittal balance. He could ambulate without assistance. (Tr. 318). Plaintiff displayed marked tenderness over the upper lumbar spine and L4 area; decreased range of motion; 5/5 strength; negative straight leg raising; and no tenderness, deformity, injury, or instability of the lower limbs. (Tr. 319). Plaintiff rated his pain severity at a level of ten on a ten-point scale and was taking Percocet every 4 hours. (*Id.*). Plaintiff was

referred to spine surgeon Dr. John Jacquemin, M.D., for consideration of kyphoplasty (the surgical filling of an injured or collapsed vertebra).

Dr. Jacquemin examined plaintiff in September 2014. (Tr. 478). Dr. Jacquemin reported that plaintiff was able to heel and toe walk without instability or limp. Although he had pain with range of motion, he did not have pain on palpation or evidence of deformity in the spine. Plaintiff exhibited full motor function of both lower extremities, intact sensation, negative straight leg raising, normal deep tendon reflexes at the knees, and no instability. (Tr. 479). Dr. Jacquemin assessed compression fractures of the L4 lumbar vertebra, L1 vertebra, and T12 vertebra with routine healing. He did not recommend surgery and expected plaintiff's fracture to heal without surgery. He also recommended that plaintiff stop smoking to aid the healing process. Dr. Jacquemin noted plaintiff was taking large amounts of narcotics almost three months post-injury and needed to cut back and change to lesser drugs. He recommended that plaintiff start physical therapy and begin weaning out of his brace. He opined that plaintiff could return to work on light duty but "[h]e is not ready for full time roofing." *Id.* He concluded, "I do not see any indication for SSI for [plaintiff]. The L5 changes also do not appear aggravated by the injury and do not need any specific [treatment]." (Tr. 479).

Plaintiff began treating with pain management specialist Magdalena Kirschner, M.D., in February 2015. (Tr. 526-29). His chief complaint was lower back pain across the buttocks down his right leg. At the time of this initial evaluation, he reported his pain as a nine out of ten. (Tr. 526). Following examination, Dr. Kirschner diagnosed chronic back pain due to spondylosis, right lumbar radiculopathy, and right sacroiliitis. (Tr. 528).

Plaintiff treated with Dr. Kirschner from March 2015 until April 2016. During this time, plaintiff subjectively rated his pain as ranging from four to eight on a ten-point scale. (Tr. 493,

496, 499, 502, 506, 509, 518, 521, 524). Pain medication provided him between ten percent to eighty percent relief, with an average relief of sixty percent. *Id.* Dr. Kirschner treated plaintiff with medication, epidural injections, medial branch blocks, and radiofrequency ablation. (Tr. 539-57).

Plaintiff underwent a Functional Capacity Evaluation (FCE) by physical therapist Matthew Klusman, MPT, in December 2016. (Tr. 587-92). Mr. Klusman concluded that plaintiff would frequently "need to switch positions and take multiple breaks in an eight-hour day, including leaving [his] work station, getting up and down as needed, and potentially elevating [his] legs 15 to 20 minutes per hour." (Tr. 587). Mr. Klusman indicated that plaintiff was limited to lifting twelve pounds, sitting twenty minutes, standing twenty-five minutes, and walking 0.7 miles. (*Id.*). Mr. Klusman concluded that based on the physical limitations he observed during the administered tests, plaintiff would be precluded from either light or sedentary work. (*Id.*).

Plaintiff also treated with orthopedic surgeon Ian Rice, M.D., for acute knee pain in February and June of 2016. (Tr. 563-72). Dr. Rice's treatment notes show plaintiff suffered from mild osteoarthritis of the knees and had a good response to steroid injections. (Tr. 566-71).

In November 2016, orthopedic surgeon Jeffrey L. Stambough, M.D., examined plaintiff. Plaintiff displayed positive straight leg raising, decreased flexion due to relative hamstring tightness, and weakness in the EHL (extensor hallucis longus) rated at 4/5. Dr. Stambough found no evidence of calf atrophy, no demonstrable sensory abnormalities, and normal reflexes. (Tr. 578). Dr. Stambough assessed chronic back pain and chronic pre-existing L5-S1 spondylolisthesis. (*Id.*). The following month, an MRI showed a severe degenerative L5-S1

disc with a low-grade stable spondylolisthesis and no significant nerve compression or significant severe stenosis. (Tr. 580). Dr. Stambough reported that plaintiff's symptoms were "predominantly back pain and his goals are to return to work." (Tr. 580). On examination, plaintiff was neurologically intact; he displayed no spinal malalignment, deformity or imbalance; on palpation, he had no muscle spasm tenderness, Gunn points, or masses; his sensation and motor strength were intact without spasticity; he had negative straight leg raising; and he had no pathologic gait or station changes. (Tr. 581). Dr. Stambough concluded that "this patient should have a new pain management referral or he gets adequate medication and secondly I feel the patient should go back to work." (*Id.*). However, in February 2017, Dr. Stambough opined that plaintiff could only occasionally lift less than 10 pounds, sit for a total of one hour and ten minutes at a time, stand and walk for a total of one hour, and never twist, stoop, crouch, squat or climb stairs. (Tr. 595-96).

### E. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ improperly assessed the amount of pain plaintiff experiences on a daily basis; (2) the ALJ improperly drew conclusions regarding the medical facts; and (3) the ALJ improperly weighed the overall evidence in determining the plaintiff's RFC. (Doc. 10).

#### 1. The ALJ's evaluation of plaintiff's subjective complaints

Plaintiff argues that the ALJ failed to accurately assess the amount of pain he experiences on a day-to-day basis. Plaintiff alleges the ALJ failed to properly assess the pain ratings reported by plaintiff over the relevant time period; the ALJ improperly cited to records relating to plaintiff's normal gait findings and hobbies to discount plaintiff's allegations of pain; and the

ALJ did not accurately assess the percentage of relief plaintiff experienced from his pain medications.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Id.*

In addition, the regulations and SSR 16-3p[4] describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type,

---

[4] The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision here, which was issued on July 21, 2016. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (report and recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 405.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-8.

The ALJ properly evaluated plaintiff's subjective complaints of pain in accordance with 20 C.F.R. § 405.1529(c) and SSR 16-3p. The ALJ determined that plaintiff had medically determinable impairments that could reasonably be expected to cause some of his alleged symptoms. (Tr. 19). However, the ALJ found plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not entirely consistent with both the medical evidence and other evidence of record. (*Id.*). In making his determination, the ALJ reasonably determined that the medical evidence does not support the severe functional limitations alleged by plaintiff. The ALJ noted that plaintiff was treated conservatively with medications, physical therapy, a back brace, a TENS unit, and chiropractic care. (Tr. 19). The ALJ also noted that records from plaintiff's treating physicians repeatedly showed normal physical examination findings, including normal gait and station, good coordination, and ambulation without assistance; imaging studies showed no progression of plaintiff's compression fractures, which were expected to heal without surgery; plaintiff was neurologically intact; and plaintiff received significant improvement of pain with medication, he experienced no medication side effects, and he experienced some relief with a heating pad and anti-inflammatories. (Tr. 19-21). The ALJ also considered that plaintiff performed work activity after his alleged onset date, including roofing work and delivery driving. (Tr. 19, 22).

10

Plaintiff contends the ALJ placed undue emphasis on the medical reports in which plaintiff rated his average pain as three to four on a ten-point scale, while not acknowledging that at other times plaintiff rated his average pain as much higher, up to six or seven on a ten-point scale, and that he received variable relief from his pain medications. (Doc. 10 at 4 and 5, citing Tr. 493, 496). Plaintiff is correct that the ALJ did not specifically cite to plaintiff's higher pain ratings in February and March 2016. (Tr. 21; *see* Tr. 493, 496). However, the ALJ is not required to cite to each piece of evidence in the record in the disability decision, and the failure to mention those ratings does not mean the ALJ neglected to consider them. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 470 (6th Cir. 2017). More importantly, while plaintiff's reports of pain varied over time, the ALJ correctly noted that plaintiff's pain medications provided up to 80% relief without side effects. (Tr. 21). In March 2015, plaintiff rated his average pain as a seven to eight out of ten and noted that his medications provided up to sixty percent relief of his pain. (Tr. 524). In April 2015, plaintiff rated his pain as a five out of ten and reported he received only ten percent relief. (Tr. 521). The following month, he rated his average pain as a two to three out of ten and reported his medication reduced his pain by sixty percent. (Tr. 518). In August 2015, plaintiff rated his average pain as a nine out of ten but reported pain medications provided sixty percent relief. (Tr. 512). In July, September and December 2015, plaintiff rated his average pain as a four out of ten but noted that pain medication reduced his pain by up to sixty percent. (Tr. 502, 506, 509). In January 2016, plaintiff rated his average pain as a four out of ten but noted pain medication relieved seventy percent of his pain. (Tr. 499). In February 2016, plaintiff rated his average pain as a seven out of ten and noted that he experienced up to seventy percent relief when working and eighty

percent when he was not working. (Tr. 496). In March 2016, plaintiff reported that his average pain was a six out of ten, but he said fifty to sixty percent of his pain had been relieved by medication. (Tr. 493). Plaintiff also consistently rated his daily activities "better" as compared to his last visit with his current pain relievers. (Tr. 493, 496, 499, 502, 506, 509, 512, 515, 518, 521). Given this evidence, and in light of the other substantial evidence of record, the ALJ reasonably concluded that while plaintiff experienced pain as a result of his medically determinable impairments, it was not of the frequency or debilitating degree of severity alleged such that it would preclude plaintiff from performing a reduced range of light work activity.

Plaintiff also alleges the ALJ erred by relying on medical records showing plaintiff had a normal gait, station, and good coordination, he could ambulate without assistance, and his hobbies were fishing and sports. Plaintiff contends such records are not determinative of whether he is disabled. (Doc. 10 at 5, citing Tr. 20-21). While plaintiff is correct that these clinical findings and the ability to engage in hobbies are not, in themselves, "determinative" of disability, such considerations are relevant in evaluating whether the functional limitations alleged by a claimant are credible. The ALJ properly considered the extent to which plaintiff's allegations of debilitating pain were consistent with the objective clinical findings and other evidence of record. *Rogers*, 486 F.3d at 248 ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). *See also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Plaintiff's

first assignment of error should be overruled.

## 2. The Conclusions Drawn by the ALJ from the Objective Medical Facts

Plaintiff's second assignment of error essentially challenges the weight the ALJ gave to Mr. Klusman's Functional Capacity Evaluation. Mr. Klusman opined that plaintiff was limited to lifting twelve pounds, sitting twenty minutes, standing twenty-five minutes, and walking 0.7 miles. The ALJ gave this assessment "little weight." (Tr. 23). Plaintiff contends the ALJ improperly cited to medical evidence showing plaintiff had a "normal gait" in discounting Mr. Klusman's opinion that plaintiff could walk only three-quarters of a mile. (Doc. 10 at 6). Plaintiff argues the ALJ failed to consider that the walking limitations Mr. Klusman assessed are related to the amount of pain that plaintiff experiences and that his own testimony supports this conclusion. *Id.*

The Court finds the ALJ's evaluation of Mr. Klusman's functional capacity assessment is supported by substantial evidence. As an initial matter, the Court notes that plaintiff mistakenly refers to Mr. Klusman as a treating physician. Mr. Klusman is a physical therapist who is not an acceptable medical source under the governing regulations. Only "acceptable medical sources" as defined under former 20 C.F.R. § 404.1513(a)[5] can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to "controlling weight." *See* SSR 06-03p, 2006 WL 2329939, *2.[6] A physical therapist is not an "acceptable medical source" as

---

[5] Former § 404.1513 was in effect until March 27, 2017, and therefore applies to plaintiff's claim filed in 2014. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

[6] SSR 06-3p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL

13

defined under the applicable Social Security rules and regulations but instead falls under the category of "other source." *Id.*; *compare* former 20 C.F.R. § 404.1513(a) (listing "acceptable medical sources") *with* former 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as therapists, are considered to be "other sources" rather than "acceptable medical sources"). Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2; former 20 C.F.R. § 404.1513(d).

Because Mr. Klusman is not an acceptable medical source, the ALJ was not bound to weigh his opinion in accordance with the regulatory factors. The ALJ complied with the regulations by considering Mr. Klusman's opinion and discounting it for valid reasons which are substantially supported by the evidence. Mr. Klusman assessed extreme functional limitations, which were not consistent with the record evidence cited by the ALJ. The ALJ found that the physical therapist's opinion was inconsistent with physical examination findings showing plaintiff had a normal gait, lumbar alignment, muscle strength, sensation, reflexes, and coordination, and negative straight leg raising. (Tr. 23, citing Tr. 318, 323, 401-04, 406-07, 410-11, 566, 580-81). In addition, the ALJ noted that Dr. Rice's notes showed only mild osteoarthritis of the knees with a good response to steroid injections. (Tr. 23, citing Tr. 566). The ALJ did not single out the gait examination findings in discounting Mr. Klusman's opinion but appropriately considered many of the objective and clinical findings of record in explaining why Mr. Klusman's opinion was entitled to little weight. To the extent plaintiff contends his

---

1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-3p applies here.

own subjective complaints are consistent with Mr. Klusman's assessment, the ALJ's decision to discount those allegations is substantially supported by the record for the reasons discussed above. The ALJ committed no error in evaluating Mr. Klusman's opinion and giving it little weight. Plaintiff's second assignment of error should be overruled.

3. **The ALJ's weighing of the evidence in determining an RFC for light work**

Plaintiff alleges the ALJ erred in concluding that plaintiff was capable of performing light work. Plaintiff acknowledges there was "a lack of consensus among all the doctors who treated [him]" but alleges "there were credible narrative opinions that supported a finding for disability." (Doc. 10 at 7). He contends the ALJ improperly gave greater weight to "selected opinions of the claimant's treating physicians that fit to justify his determination" of an RFC for light work. (*Id.*).

Specifically, plaintiff argues that the ALJ erroneously relied on the opinions of the state agency physicians[7], whose "conclusions contradict much of the objective medical evidence and the claimant's subjective complaints related to his ongoing pain." (*Id.*). The Court finds that plaintiff has waived his argument that the ALJ improperly relied on the state agency physicians' opinions. Plaintiff has failed to identify the objective medical evidence that purportedly contradicts the conclusions of the state agency physicians or to present a cogent argument in this regard. Plaintiff has failed to develop this argument legally or factually, and it is not the Court's obligation to flesh out his argument for him. *See Rice v. Comm'r of Soc. Sec.*, 169 F.

---

[7] State agency physicians Steve E. McKee, M.D. and Elizabeth Das, M.D., reviewed plaintiff's records in December 2014 and March 2015, and found that plaintiff could perform light work with frequent balancing, kneeling, crouching, and climbing ramps and stairs and occasional stooping and crawling. They found that plaintiff could never climb ladders, ropes, or scaffolds. (Tr. 85-92, 94-102). The ALJ concluded that the opinions of the state agency physicians were generally consistent with the evidence, but the ALJ further limited plaintiff based on the additional evidence received after their review. (Tr. 22).

15

App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (citing *United States v. Layne,* 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997)). To the extent plaintiff argues his own testimony contradicts the findings of the state agency physicians, the Court finds no error in this regard as the ALJ's weighing of plaintiff's subjective complaints is supported by substantial evidence as discussed above.

Plaintiff also reiterates his contention that the ALJ improperly weighed the opinion of physical therapist Mr. Klusman. (Doc. 10 at 7). However, for the reasons outlined above, the ALJ's decision to give Mr. Klusman's assessment little weight is substantially supported by the record evidence. Plaintiff has identified no other medical evidence or argument in support of his third assignment of error.

The ALJ's decision in this case is based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241 (internal quotation marks and citation omitted). Here, the ALJ was faced with conflicting evidence as to the severity of plaintiff's functional limitations, and it was his duty to resolve the conflicts in the competing medical opinions. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). Even if this Court were inclined to resolve the conflicts in the medical evidence differently, the ALJ's decision must stand if it is supported by substantial evidence. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Bogle v. Sullivan,* 998 F.2d 342, 347 (6th Cir. 1993). The Court must affirm an ALJ's decision if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even if the record could support the opposite

16

conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001). As the ALJ's decision is substantially supported by the record, plaintiff's third assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date: 2/20/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ANTHONY HOFFMAN,
Plaintiff,

Case No. 1:18-cv-171
Dlott, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).